# Louis H. Ticknor

## *v.*

# Robert McClelland *et al.*

1. **Sale** *of growing crops—delivery.* In case of the sale of standing crops the possession is in the vendee until it is time to harvest them, and until then he is not required to take manual possession of them.

2. **Sales**—*manual delivery of ponderous goods, not required.* Where goods are ponderous and incapable of being handed over from one to another, there need not be a manual delivery, but it is different where the property is capable of being immediately removed.

3. **Same**—*fraudulent, if possession retained by vendor.* Any sale of personal property, where it remains with the vendor, if it is that character of property that is capable of being removed, is fraudulent in law as to credi-

tors and subsequent purchasers, notwithstanding the sale may be in good faith, and for a valuable consideration.

4. CHATTEL MORTGAGE—*before whom should be acknowledged.* A chattel mortgage may be acknowledged before a police magistrate of a village, by a resident of the township in which the village is situated, although he is not a resident or voter in the village.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. MATHER & HARPOLE, for the appellant.

Mr. W. L. GROSS, for the appellees.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was an action of replevin, brought by the appellees, Robert McClelland and Thomas L. McClelland, against the appellant, Louis H. Ticknor, sheriff of Sangamon county, to recover possession of certain personal property which had been levied upon under an execution against John W. McClelland. Appellees claim the property under a prior sale of part, and a prior mortgage of the residue, made to them by the execution debtor.

The only questions presented for decision relate to the sufficiency of the delivery of the property sold, and of the acknowledgment of the mortgage.

The property is 135 acres of standing corn; 3 stacks of hay; 29 hogs and shoats; 3 breaking plows; 1 corn planter; 3 cultivators; 2 sucking colts; and 2 bay mares.

As to the property sold—being all, except the two bay mares—the testimony is, that the sale was made on the 23d of September, 1875, the consideration, $1000, being a pre-existing indebtedness from John W. McClelland to Robert and Thomas L. McClelland; the property, at the time of sale, being upon the farm occupied by John W. McClelland, some sixteen or eighteen miles distant from where the sale was made; that on the day following, Thomas and Robert were to come and receive the property. On the 24th day of Septem-

ber, Robert, and one Groves, for Thomas, went to the farm. They selected out 29 hogs and shoats and turned them into a pasture, and directed John W. to feed them some of the soft corn.   John W. went with them and showed them the plows, corn planter and cultivators, where they were stored; he also showed them the stacks of hay.   They did not go into the cornfield.   They then rode back some sixteen or eighteen miles, as they had come, on horseback, taking none of the property with them.   This is all that relates to any delivery or change of possession of the property.

On the next day, September 25, the parties met at the village of Williamsville, and John W. executed a bill of sale of the property to Robert and Thomas L., the two latter, at the time, each indorsing on a note for a larger amount which he held against John W., a credit of $500.   On the 27th of September, 1875, two days after the making of this bill of sale, one S. H. Jones recovered a judgment against John W. McClelland, for the sum of $2972, in a suit against him, which was pending at the time of said sale; and on the same day the execution in question was issued on the judgment, which came into the hands of the sheriff on the following day, and was, by him, on the 29th day of September, 1875, levied upon the property as that of John W. McClelland, it all being found on his farm, which he occupied.   The appellees immediately replevied it from the sheriff.

As regards the standing corn and stacks of hay, we consider the delivery of possession sufficient.   In case of the sale of standing crops, the possession is in the vendee until it is time to harvest them, and until then he is not required to take manual possession of them.   *Bull* v. *Griswold*, 19 Ill. 631; *Graff* v. *Fitch*, 58 id. 373; *Thompson* v. *Wilhite*, 81 id. 356. Where goods are ponderous and incapable of being handed over from one to another, there need not be a manual delivery of them.   *Chaplin* v. *Rogers*, 1 East, 192; *Jewett* v. *Warren*, 12 Mass. 300; *Rice* v. *Austin*, 17 id. 197; *Hart* v. *Wing*, 44 Ill. 141.

As to the rest of the property which was the subject of the

sale, it was that character of property that was capable of being immediately and readily removed, and a different rule governs.

The policy of the law in this State will not permit the owner of personal property to sell it, and still continue in the possession of it. Possession being one of the strongest evidences of title to personal property, if the real ownership is suffered to be in one, and the apparent ownership in another, the latter gains credit as owner, and is enabled to practice deceit upon mankind. It is the well established doctrine of this court, that an absolute sale of personal property, where the possession is permitted to remain with the vendor, is fraudulent *per se*, and void as to creditors and purchasers. *Thornton* v. *Davenport*, 1 Scam. 296; *Kitchell* v. *Bratton*, id. 300; *Rhines* v. *Phelps*, 3 Gilm. 455; *Reed* v. *Eames*, 19 Ill. 594; *Thompson* v. *Yeck*, 21 id. 73; *Cass* v. *Perkins*, 23 id. 382; *Lewis* v. *Swift*, 54 id. 436; *Thompson* v. *Wilhite*, *supra*.

There was, here, but a formal and temporary change of possession. The vendees did not take and retain the possession of the property, but it was permitted to remain with the vendor. In *Thompson* v. *Yeck*, it was said, in all cases the change of possession must be substantial and exclusive. In *Thompson* v. *Wilhite*, some hogs, among other property, were the subject of sale. They remained in the possession of the vendor and he was employed to feed them. It was held there was no sufficient delivery as against creditors, and that any sale of personal property, when it remains with the vendor, if it is that character of property that is capable of being removed, is fraudulent in law, as to creditors and subsequent purchasers, notwithstanding the sale may have been in good faith and for a valuable consideration.

We can come to no other conclusion, than that suffering this portion of the property, which was capable of being readily removed, to remain with the vendor, as was done, rendered the sale of it fraudulent in law, and void as to creditors, and that it was subject to the levy of the execution.

The mortgage embraced the two bay mares. The objection

taken to the acknowledgment of the mortgage is, that it was not before the proper officer. The provision of the statute is, that "such instrument may be acknowledged before a justice of the peace of the town or district where the mortgagor resides." R. S. 1874, 711, § 2. The acknowledgment here, was before a police magistrate, N. R. Taylor, of the village of Williamsville, on the 24th day of December, 1874. The village of Williamsville is in the township of Williams, in Sangamon county. N. R. Taylor was, at that time, a police magistrate of said village, and not a justice of the peace of the township of Williams, wherein, outside of the village, the mortgagor resided. The constitution provides, that the jurisdiction of justices of the peace and police magistrates shall be uniform. Art. VI, § 21. By the statute it is provided, that "There may be a police magistrate elected, at a regular annual election, in each village, who shall give bonds, qualify, and have the same jurisdiction as other justices of the peace." Rev. Stat. 1874, 244, § 192.

This court, in *Herkelrath* v. *Stookey,* 58 Ill. 21, held that police magistrates, under the law then existing, had power to take acknowledgments of chattel mortgages, and for the reason that the legislature, by the act of 1854, (Laws 1854, p. 11,) had conferred upon police magistrates the same jurisdiction and powers as other justices of the peace. But, inasmuch as the language of the law conferring authority upon police magistrates has been changed, the law of 1874 conferring upon such officers the same jurisdiction, only, as other justices of the peace, and not the same jurisdiction and *powers,* as did the act of 1854, it is insisted that the above decision does not apply; that the word jurisdiction must be taken in its strict, technical meaning, to-wit: the authority by which judicial officers take cognizance of and decide causes; that the act of taking the acknowledgment of a mortgage is ministerial, and not judicial; and hence, that police magistrates, having now but the same jurisdiction, not the same jurisdiction and powers, as justices of the peace, are not vested with the ministerial power to take acknowledgments of chattel mort-

gages. We do not attach any special significance to the change of language in the statute of 1874, in dropping the word "powers," in connection with jurisdiction. We think it may have been done but to pursue the language of the constitution in that respect. We can not think that it was the intent to limit the authority of police magistrates to the judicial jurisdiction of justices of the peace, but that the term jurisdiction was used in a more comprehensive sense, and that it was the purpose of the statute to confer upon these two classes of officers the same power and authority, and that still, notwithstanding the change of language in the statute of 1854, a police magistrate may take the acknowledgment of a chattel mortgage.

The mortgagor, John W. McClelland, did not reside in the village of Williamsville at the time of the acknowledgment, but resided outside of the village, in the township of Williams, in which the village was situated, and it is insisted that the mortgage was not properly acknowledged before a police magistrate of the village of Williamsville, but should have been acknowledged before a justice of the peace of the town of Williams, in which the mortgagor resided. By the statute, as before observed, the mortgage may be acknowledged before a justice of the peace of the town or district where the mortgagor resides. The word "may," here, is imperative, and the district, in the statute, means election district. *Henderson* v. *Morgan*, 26 Ill. 431.

The election districts of the police magistrate of the village of Williamsville, and of the justice of the peace of the town of Williams, were not strictly identical, the one embracing the village only, and the other the whole town. Still, we think it an unnecessary strictness of construction to confine the mortgagor, in his acknowledgment, to that officer alone whom his place of residence entitles him to vote for. The statute is speaking of justices of the peace when it says the acknowledgment may be before a justice of the peace of the town or district where the mortgagor resides; and, as in counties under township organization justices of the peace are elected in

towns, and in counties not under township organization, in election precincts, the word "district" may not improperly be taken as referring to such election precincts. In that case the term "district" would have no application here, the county being under township organization, and the acknowledgement would have been properly taken before an officer of the town where the mortgagor resided. Had the mortgagor lived in the village, he might, undoubtedly, have acknowledged the instrument before either the police magistrate or the justice of the peace of the town, as he would have resided in the election precinct of, and been entitled to vote for, each officer. And though not residing in the village, and not entitled to vote for the police magistrate on such account, still we think he might make the acknowledgment before either a justice of the peace of the town, or the police magistrate.

The latter would be an officer within the limits of the town in which the mortgagor resided, and, we think, may be embraced under a fair construction of the language of the act respecting the acknowledgment. We hold the acknowledgment of the mortgage sufficient.

As respects the corn, the hay and the two bay mares, the judgment is affirmed; as respects all the rest of the property, it is reversed, and the cause, so far as relates thereto, is remanded.

*Judgment reversed in part.*

Mr. JUSTICE DICKEY: In one position in the foregoing opinion I do not concur. To give validity to a chattel mortgage, as against a creditor, in such case, it must be acknowledged "before a justice of the peace *of* the *town* or *district* where the mortgagor resides." The town or district *of* a justice, in this statute, means that town or district by which he is elected. The district *of* a police justice is the village in which he is elected. He is not justice *of* any town whatever. He is not elected by a town. His jurisdiction is not confined to any one town more than another. The plain meaning of this statute is, that a town justice may take acknowledgments of persons

residing in the town by which he is elected, and that a district justice may take acknowledgments of residents of the district by the electors of which he was chosen, whether that district consist of a precinct or of a village, or a city. The officer, in this case, was the police justice of the village of Williamsville, not of the town of Williams. He was a village officer, not a town officer in any sense whatever. In fact, he signs himself as police justice and acting justice of the peace in and for Sangamon county. In one sense he is a county officer, but in no sense a town officer. This is no mere matter of form. The statute requires a memorandum of the mortgage to be entered in the justice's docket. The plain purpose of the statute was to enable purchasers and creditors to protect themselves against such liens by simply examining the dockets of the justices *of the town* in which the owner resides, and in case his residence is also in a village or city, by also examining the docket or dockets of the village or city justice or justices—that is, of the police justice or justices—of the village or city.

Neither the language of this statute, nor any public policy as indicated by any statute, demands that the creditor or purchaser in such case shall be required to look further, and examine, not only the dockets of all the town justices or precinct justices, (where the owner does not live in a village or city,) but also all the dockets of all the villages which may happen to lie in any part of the town or precinct, although the owner does not live in either village or city.

In many cases, in this State, town lines pass through a village or city, having within its boundaries parts of two or more towns. Should the police justice of such village or city have his residence in that part of the village or city embraced in one town, and keep his office or place of business in that part of the village or city embraced in another and different town, it would start some embarrassing questions under the rule laid down in the governing opinion in this case. If he can effectively take the acknowledgments of persons not residing in the bounds of his constituents, can he take acknowledgments from the residents of every town, any part of which

is embraced within the village or city limits? Or is he to be confined, in the exercise of these powers, to the residents of some one of such towns? If so, to the residents of which town—to those of the town embracing that part of the village or city which includes his residence, or to those of the town in which that part of the village or city wherein his office is found, in which he transacts his other official business? The only safe rule is that indicated by the language of the statute, which limits the power of justices, in this regard, to the district which embraces the residence of those electors entitled, by law, to vote for such officer. This rule is plain and simple. The statute requires no proof to the justice of the identity of the mortgagor. This may have been left thus for the reason that the mortgagors in such cases, being always within the list of such electors, the justice is presumed to be personally acquainted with such persons.

Again, some towns contain, within their boundary, several villages, and may have as many police justices within their respective boundaries. In such case, by the governing opinion, a police justice of one village could take acknowledgments from residents of another village, and in such case no creditor or purchaser could be safe, short of going to the county records, without examining the docket of the police justice of the village where the owner resides, and the dockets of the town justices of the town in which such residence is, but also to examine the dockets of the police justices of all the villages lying within the territorial limits of the town in question.