## G. A. GRAY CO. v. TAYLOR BROS. IRON-WORKS CO., Limited, et al.

### (Circuit Court of Appeals, Fifth Circuit. November 27, 1894.)

### No. 257.

1. CONFLICT OF LAWS—LOCUS OF CONTRACT OF SALE—RESCISSION.

    A corporation domiciled in Louisiana placed an order for a machine with a manufacturing company located in Ohio; the correspondence showing the complete terms of the contract, both as to amount and time of payment. The builder sent an agent to superintend the erection of the machine, and wrote to the purchaser that it might hand the cash and notes to him. The machine being ready for operation, the purchaser telegraphed that it could not make the cash payment. The seller then wired their agent to accept the purchaser's draft at 60 days, with interest, in lieu of the cash payment. *Held*, that the original contract was made under the law of Ohio, and that there was nothing in the circumstances to show a subsequent rescission of that contract and the making of a new one in Louisiana.

2. SAME—VENDOR'S PRIVILEGE.    ·

    As the common law governs contracts of sale of personal property in Ohio, where this contract was made, the sellers could not claim the vendor's privilege given by the Civil Code of Louisiana.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

This was a bill by the G. A. Gray Company against the Taylor Bros. Iron-Works Company, Limited, and others, for injunction, and for rescission of a sale, etc. Afterwards, an amended and supplemental bill was filed, making Michael Frank a party defendant, alleging that he had purchased from defendant the property which complainant was seeking to recover. A decree was entered dismissing the bill and supplemental bill, as against Michael Frank. Complainant appeals.

F. L. Richardson, for appellants.

By article 3227, Civ. Code, "he who has sold to another any movable property which is not paid for, has a preference on the price of his property over the creditors of the purchaser whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser; so that, if the vendor may have taken a note or other acknowledgment from the buyer, he still enjoys the privilege." Rivas v. Hunstock, 2 Rob. (La.) 193. If it is urged that the seizure and sale of the property have destroyed the vendor's lien, it was held in Lyons v. McRae, 14 La. Ann. 438: "Where property has been seized and sold under execution, the money realized still belongs to the debtor, and must be surrendered to the syndic." Nor can it be claimed that it was necessary to preserve the privilege by registry. Stevenson v. Brown, 32 La. Ann. 461; Allen v. Buisson, 35 La. Ann. 108; Bank v. Williams, 43 La. Ann. 419, 9 South. 117. The contract made in Ohio should have been made and completed in that state, to be an Ohio contract,—for in McIlvaine v. Lagare, 36 La. Ann. 360, where the contract of sale was made in Ohio, but the acceptance was not to take place until after inspection in Louisiana, it was held that this was a Louisiana contract; and in Overend v. Robinson, 10 La. Ann. 728, "where the sale between the parties was made in New York, executory merely, with the intention that it should be consummated in New Orleans, and it was consummated there, the contract must be considered as completed in New Orleans, and the vendor's privilege may be exercised according to the laws of Louisiana." In the case at bar the planer was to be delivered and set up in New Orleans. That setting up was a thing to be done in this state satisfactorily before payment. It was to be erected and tested. According to the above decisions, that executory contract would have made this a Louisiana

contract. But that contract was annulled by the refusal of defendants to comply with its terms after its arrival, and defendants then made to Mr. Edman, the agent in this state, a new proposition, on new terms. The Gray Company released them from it, consented to the revocation, and might have sold to any third person. By Civ. Code, arts. 1805, 1806, the modification or change in a proposition is in all respects a new offer, and "he who makes the offer may withdraw it." See Benj. Sales, p. 287. Defendant Mr. Frank, who alone defends this suit, claims that this was only a modification of the Ohio contract, and that it is the same contract. We have seen that contract was executory here, but if it was not, and was complete there, under article 1805, Civ. Code, that contract ceased to exist by mutual agreement. By this article, "the acceptance to form a contract must be in all things conformable to the offer." It cannot be denied that that acceptance had been withdrawn after its arrival, and both parties set free. It cannot be denied that a new and materially altered offer to buy was made after the arrival of the thing here. There can be no question of novation of the contract, but it was annulled, and that long before the failure of defendants, and before any litigation was contemplated.

Another question was raised in argument in the lower court. Admitting that this machine was here in New Orleans, and the property of the Gray Company, of Ohio, but represented by an agent here, will a sale made by that agent to one domiciled here, upon an offer transmitted through the agent to the foreign principal, and accepted through same agency, be a Louisiana contract? The supreme court of this state holds that it is, in Chaffe v. Heyner, 31 La. Ann. 599: "As to rights and remedies of creditors, personal property has a situs or locality, and is to be governed by the laws of the country where it is located." When there arises a conflict between the law of the domicile of the owner and the creditor, the court holds this: "While recognizing the principle that all contracts in regard to personal property must be regulated by the lex loci of the domicile of the owner." But the situs of the thing sold cannot determine the question presented as much as the question, under what laws did the agreement take place? In the same case above quoted the court said, "This was not an executed contract, but an executory contract, and it was to have its execution in Louisiana." In Beirne v. Patton, 17 La. 590, this court correctly announces that "it is a well-settled rule that where a contract is either expressly or tacitly to be performed in another place than that where it is made, its validity is to be governed by the law of the place of performance." Story, Confl. Laws, p. 233; 2 Kent, Comm. pp. 393, 459. So that this contract at bar, whether viewed as having its inception in Ohio and completion here, or as wholly begun and executed here, after its arrival, should be governed by the laws of this state, as to the rights and remedies.

It was further argued by defendant that this planer had become part of the realty by being placed in the foundry upon a brick foundation. The plan annexed shows the location, and the testimony shows that it is movable without injury to the walls of the building. In Lapene v. McCan, 28 La. Ann. 749, it was held that steam boilers which could be moved without damage to the sugar house did not form a part of the realty, and the vendor's privilege was maintained. Not being attached to the building, it was a movable. Mackie v. Smith, 5 La. Ann. 717. In Daugherty v. Vance, 30 La. Ann. 1247, mules attached to a plantation, and considered an immovable by destination. were seized and sequestered, and vendor's privilege recognized as against the entire immovable property.

Finally, we respectfully submit that it has been shown that the contract sued upon was a Louisiana contract; that, if considered as having had its origin in Ohio, it was executory in this state, and that contract was set aside. and a new one made here, after the machine arrived here; that this machine did not become a part of the foundry building,—an immovable; that complainants are entitled to the vendor's lien and privilege upon the property sold, or the proceeds thereof in the hands of defendant Mr. Frank, as prayed for.

Max Dinkelspiel, W. O. Hart, J. D. Rouse, and William Grant, for appellees.

Before. PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

McCORMICK, Circuit Judge. We affirm the judgment of the circuit court in this case. The case hinges on the question whether the contract of sale of certain movable goods mentioned in the record was made under the law of Ohio, or under the law of Louisiana. Taylor Bros. Iron-Works Company, domiciled in New Orleans, La., placed with the appellant (an Ohio corporation doing business in Cincinnati) an order for a planer. The correspondence between these parties shows their agreement as to the thing to be manufactured and sold by appellant to Taylor Bros. Iron-Works Company, the price, and the time of payment. The machine, as first ordered, was priced at $4,445. This was changed so as to add $90 to the cost, making the price $4,535, one-fourth of which was to be paid cash on the day of the arrival of the machine in New Orleans, and the balance in six months from that date, with interest. On the 18th of April, 1892, the purchaser wrote the appellant to "push the work [of making the machine] to completion as soon as practicable, and forward by quickest route, making best rate you can for us." On July 14th, appellant wrote the purchaser:

"Your planer is done, and is being prepared for shipment. Ordered in the car yesterday, and are in hopes of getting car out to-morrow evening. * * * Our superintendent will start just as soon as you wire us the machine has come."

On July 26th, appellant wrote purchaser:

"Not hearing from you, we take it for granted that planer has arrived in New Orleans, and possibly our Mr. Erdman is with you. If so, you might hand Mr. Erdman the cash and notes in settlement for planer."

On July 29th the purchaser replied:

"We have received the planer, and are now unloading same. Mr. Erdman was over last night, but, as we will not have it on foundation before Saturday evening, he went back, to return Saturday evening and spend Sunday with us. It will be the middle of next week before we can run it, as the driving gear comes on the outside, and we have to put up three counter shafts to reach it."

The purchaser placed the machine in position in the iron works, adjusted it to the other machinery and the motive power therein, ready for use, and then, on the 10th day of August, wired appellant, at Cincinnati, "Not a matter of choice, but necessity; cannot make cash payment now." The appellant then wired Mr. Erdman to accept purchaser's 60-day draft, with interest, in lieu of cash payment. We are of opinion that this case does not come within the authority of McIlvaine v. Legare, 36 La. Ann. 359, or within any of the authorities cited for appellant. This contract of sale was made under the law of Ohio, the place of the domicile of the vendor. The sale was complete on the delivery of the finished machine to the carrier. The fact that appellant's superintendent came to New Orleans to be present at the starting of the machine to work did not effect or show a suspension of the contract of sale. There was nothing in the circumstances, the correspondence, or the conduct of any of the parties to show or effect a rescission of the sale made

in Ohio, and the making of a new sale in Louisiana. The thing, the subject of the sale, remained the same in substance and situation. The price was not changed. The purchaser could not make the cash payment, and the vendor accepted a 60-day draft, with interest, in lieu thereof. This does not express or imply a rescission of the sale already made under the law of Ohio, where the common law governs such contracts. The purchaser did not pay appellant for the machine. It has been seized and sold at the suit of other creditors of the Taylor Bros. Iron-Works Company. Appellant's contract being a common-law contract of sale of personal property, it cannot claim the vendor's privilege given by the Civil Code of Louisiana. The judgment of the circuit court is affirmed.