### In re PEASE CAR & LOCOMOTIVE WORKS.

(District Court, N. D. Illinois. February 23, 1905.)

1. BANKRUPTCY—DELIVERY OF PROPERTY SOLD—LAW GOVERNING.

In a controversy between a purchaser of property from a bankrupt and the trustee in bankruptcy as to the sufficiency of the delivery prior to the bankruptcy to vest the purchaser with title, the issue is governed by the law of the state where the property was situated, and where it was to be repaired and delivered to the purchaser.

2. SALE—SUFFICIENCY OF DELIVERY—PROPERTY REMAINING IN POSSESSION OF SELLER.

A manufacturing corporation a short time before its bankruptcy contracted to sell two locomotive engines which were to be repaired and put in good condition by bankrupt, inspected by an agent of the purchaser, and then delivered to a railroad company for shipment. The repairs were completed, the name of the purchaser painted by its direction on each side of the engines, they were inspected and accepted by the agent and paid for by the purchaser in accordance with the contract, but shipment was delayed on account of high water and they had not been actually delivered to the railroad company at the time of the institution of the bankruptcy proceedings and were taken possession of by the receivers appointed therein. *Held*, that under the law of Illinois there had been a sufficient delivery to pass title to the purchaser.

In Bankruptcy. On exceptions to report of special master upon the petition of the Sabine Tram Company praying for delivery of property.

Moses, Rosenthal & Kennedy, for Edwin C. Day and Henry L. Wilson, receivers in bankruptcy, and for trustee in bankruptcy.

Roscoe L. Roberts, for petitioner Sabine Tram Company.

SANBORN, District Judge. Exceptions to report of special master, upon the petition of the Sabine Tram Company, praying for delivery of property.

The facts upon which the petition and report of the special master are based have been agreed upon between the parties, and are as follows: On January 19, 1903, a contract was entered into in Texas between petitioner and bankrupt for the sale and purchase of one Dickson Mogul locomotive, price $3,400, f. o. b. Hegewisch,

Pease Car & Locomotive Works; terms, one-fourth cash, and balance evidenced by 24 notes for $113 each, falling due each month thereafter; it being further agreed that Johnson, Caswell & Co. were to inspect the engines for Sabine Tram Company as its agent, and the engines were inspected by Johnson, Caswell & Co., and pronounced as complete, according to contract by them. The 10-wheel locomotive was purchased February 19, 1903, for $4,500, under the same terms as the Mogul—one-fourth cash, and 24 notes for $149.58 each, falling due each month. The agreements evidencing said sale appear in letters attached to the petition, and are to be construed as part of this stipulation. The Sabine Tram Company completed its part of the contract by paying the Pease Car & Locomotive Works $850 on February 18th and delivering its 24 notes for $113 each, and by paying $1,125 cash on February 27th and delivering its 24 notes for $149.58 to the Pease Car & Locomotive Works on March 14th. These notes were immediately sold to the First National Bank of Hammond, Ind., and the Sabine Tram Company notified to pay the notes there, which the Sabine Tram Company have continued to do, having paid to date three notes for $113 and three notes for $149.58. These engines were not ready for delivery at the time they were bought, certain repairs thereon being necessary in order to make the engines suitable for shipment, but said engines were ready for shipment about March 1st, and the Sabine Tram Company were advised thereof about said time. The Pease Car & Locomotive Works were given 60 days under the contract in which to put these engines in first-class secondhand condition. The Mogul engine was paid for in full February 18th, before it was inspected; the 10-wheel engine was paid for in full March 14th. Both engines were to be shipped together, but on account of high water in Texas it was impossible for the Sabine Tram Company to give shipping directions until April 7th—see their letter of that date. These engines were tested by Johnson, Caswell & Co. while same were in the yards of the Pease Car & Locomotive Works at Hegewisch, and tested by them by having them fired up and running them under a full pressure of steam. The name "Sabine Tram Company" was painted upon both of these engines on either side thereof, and upon the tenders, by the Pease Car & Locomotive Works, under the orders and directions of the Sabine Tram Company. It is further stipulated and agreed by the parties that during the period of time after the sale of said engines by said bankrupt to said petitioner, and before the 2d day of April, debts were created by said bankrupt to divers creditors, who have proven and secured the allowance of such claims against said estate in bankruptcy. Receivers were in charge of the plant at Hegewisch on April 2d; on May 12th, receivers notified the Sabine Tram Company that further repairs would have to be made on engines before they could be shipped, and made price for repairs; on May 23d, the Sabine Tram Company, by letter to receivers, authorized them to go ahead and make the repairs; on June 3d, the Sabine Tram Company is notified by receivers that repairs have been made, and their bill therefor is $248.50; receivers will obtain necessary order of court releasing the engines for $50 addi-

tional. The receivers afterwards advised the Sabine Tram Company that the company would have to make application for the delivery of the engines through its own counsel.

Whether the petitioner is entitled to delivery of the locomotives is one of Illinois law, the place where the work was to be done and the delivery made. G. A. Gray Co. v. Taylor Bros. Iron Works, 66 Fed. 686, 14 C. C. A. 56. The contention of the trustee, briefly stated, is that because there was no actual delivery of the two locomotives purchased by the petitioner from the bankrupt accompanying the sale of such locomotives by the bankrupt to the petitioner, and because the possession of said locomotives remained continuously from the time of said purchase until and after the appointment of the receivers herein, and that said locomotives were taken possession of by said receiver as part of the property of the bankrupt estate, said sale is void as against such trustee, who stands in the same position as an execution or attaching creditor. The rule of the law in Illinois is well settled that the retention of possession by a vendor of chattels is not merely prima facie evidence of fraud sufficient to avoid the sale when attacked by an execution or petitioning creditor who has acquired a lien upon said property, but that such retention of possession carries with it a conclusive and irrebutable presumption of fraud. See the numerous Illinois cases cited in 14 Am. & Eng. Encyc. of Law, 358.

It is further contended on the part of the trustee that the painting of the name upon the locomotives was only done pursuant to specification, and is not of itself indicative of a present intention to cause delivery. It was merely indicative of the fact that the Pease Car & Locomotive Works was complying with its contract with the petitioner, and that if the engines were satisfactory, and in accordance with specifications, and had been properly inspected, there would be at some future time delivery of the property. In other words, to use the language of one of the decisions (Burchinell v. Weinberger [Colo.] 34 Pac. 911), the painting of such name was merely indicative of the present intention of delivery in the future.

A short review of the Illinois cases will be sufficient to show what rule should be applied to the facts. In Ticknor v. McClelland, 84 Ill. 471, the property sold was standing corn, three stacks of hay, hogs, shoats, plows, planters, etc. The court held that as to the corn and stacks of hay the delivery of possession was sufficient, but not as to the other property. There was no physical change of possession. All the vendee did was to examine the farming implements, horses, and the hay. No money was paid, and no bill of sale drawn until the next day. The corn and hay being ponderous and incapable of immediate delivery, it was held that the mere looking it over was a sufficient act on the part of the vendee to constitute a delivery against a creditor. In Thompson v. Wilhite, 81 Ill. 356, the property was growing wheat and corn, an undivided half of a reaper, and a number of hogs. No actual possession was taken of any of the property, but it was held that there was a sufficient delivery as to the wheat, corn, and undivided half of the reaper, but not as to the hogs. In Burnell v. Robertson, 5 Gilman, 282, certain stage horses, their har-

ness, etc., and a large quantity of other property upon different stage routes in Illinois, Iowa, and Wisconsin, were sold. The vendees immediately proceeded as fast as possible to take possession of the property conveyed. Before they had taken possession of the particular property in suit, it was seized by officers under an attachment. It was held that the sale was void as to creditors, because there was no sufficient delivery of possession. In Hewett v. Griswold, 43 Ill. App. 43, the court say:

"When an actual change of possession is not practicable, the acts that will constitute a sufficient delivery as to creditors vary in the different classes of cases, and depend upon the character of the property sold and the circumstances of each particular case."

In Barker v. Livingston Co. Nat. Bank, 30 Ill. App. 591, 603, the vendor instructed his custodian to nail a sign on a crib of corn sold, stating that it was the property of the vendee. This was done. Held a sufficient delivery. The court say that the removal of the corn was utterly impracticable, and would have involved the purchaser in large expense. In Vaughn v. Owens, 21 Ill. App. 249, growing corn was sold, and was to be gathered by the vendor, measured, and cribbed by him on his premises. It was objected that there was no delivery, because, when the corn was gathered after maturity, the vendee lost his right by permitting it to remain in the apparent possession of the vendor. The court held that the act of cribbing by the vendor for the vendee was sufficient delivery. In Vanscoy v. Bigelow, 28 Ill. App. 301, the coal office, coal shed, and one four-ton Howe scale were sold. The keys were delivered to the vendee, who within an hour afterwards delivered the key back to the vendor, who retained possession for the vendee. It was held that the possession taken was all that the law required, considering the nature of the property. In Lowe v. Matson, 140 Ill. 108, 29 N. E. 1036, an insolvent debtor made a voluntary assignment of a lumber yard. The assignment was made at 10 o'clock in the forenoon. About 50 minutes later the assignee informed the bookkeeper of the assignor in charge of the lumber office, by telephone, and ordered him to sell no more lumber, but to take charge of the yard for him, and at once prepare a statement of the assignor's creditors. The bookkeeper thereupon stopped the delivery of lumber then being made, and proceeded to make a list of creditors. About an hour later two executions against the assignor were levied upon the lumber yard. Still later, and about 2 o'clock in the afternoon, the assignment was filed with the county clerk of the proper county. It was contended that there was no delivery prior to the levy of the executions. The court, however, held that the transfer being founded on a good consideration, with no intention in fact to defraud creditors, the ordinary rule that a failure to deliver possession carries with it a conclusive and irrebuttable presumption of fraud did not apply, because the transfer was sufficiently a matter of publicity or notoriety. It will be seen that there was no publicity or notoriety until the recording of the assignment after the levy.

In other states the authorities are quite conflicting as to what constitutes a sufficient delivery to rebut the presumption of fraud.

In Pope v. Cleney, 68 Iowa, 563, 27 N. W. 754, a large quantity of corn in a crib was sold, and the vendee nailed up certain holes in the crib. This was held to be a sufficient act on his part to show a change of possession. In Barney v. Brown, 2 Vt. 374, 19 Am. Dec. 720, certain sheep pointed out by the vendee in the vendor's flock were sold, and the vendee directed the vendor's servant to make a red mark on each sheep so selected. The sheep were then allowed to run as before with the vendor's flock, and the whole flock was levied on by a creditor of the vendor. Held a sufficient change of possession. In Haynes v. Hunsicker, 26 Pa. 58, a quantity of lumber piled in a millyard was sold, and the pile was conspicuously marked with the vendee's name. This was held to be a sufficient change of possession, as the roads were so bad that the vendee could not haul the lumber. In Chase v. Garrett (Pa.) 1 Atl. 912, it is said that a change of possession is essential only when the character of the property and the situation of the parties render such a change reasonable. In Thompson Manufacturing Co. v. Smith, 67 N. H. 409, 29 Atl. 405, 68 Am. St. Rep. 679, the vendee examined and accepted an engine, and took away with him such parts as were liable to be lost or stolen. Held a sufficient change of possession. In Hawkins v. K. C. Hydraulic, etc., Co., 63 Mo. App. 64, the purchaser of brick had notice of his ownership placed on the piles. The notices remained there for two months, but had disappeared at the time of a levy thereon as the property of the vendor. Held a sufficient change of possession.

I think the facts in this case show a sufficient delivery of possession. While the engines were not strictly ponderous articles, yet they would ordinarily be delivered only upon a railroad track. The reason why they were not thus delivered was that high water in Texas, where the vendee was, prevented the giving of shipping directions. It is true that they might have been delivered to a railroad company for shipment, and their actual shipment delayed; but this would have subjected them to demurrage charges. It is also true that a custodian might have been placed by the vendee in charge of the engines in the yard of the vendor; but this is likewise true of the stacks of hay in the case of Ticknor v. McClelland, supra. The hay was no more ponderous in its character than the engines, and was equally capable of immediate delivery. The engines were fully paid for, and the name of the vendee painted on each side of both engines. The transaction was entirely in good faith, and no creditor of the vendor was in any way injured. I think that the painting of the vendee's name on the engines made the sale sufficiently notorious.

Under the rule in Illinois, as applied by the Court of Appeals of this circuit in Dooley v. Pease, 88 Fed. 446, 31 C. C. A. 582, I think there was a sufficient delivery, and that the exceptions to the master's report should be overruled.