Syllabus.

## ISAAC VAN DUZOR

*v.*

## G. H. ALLEN.

1. SALE—*when the title passes as between the parties.* Where a person agrees to sell a threshing machine, for which the purchaser is to give a note with personal security, or secured by a chattel mortgage on the machine, and the purchaser obtains possession with the consent of the vendor, but fails to give the note or any security, the trade, as between the parties, will not be so far completed as to pass the title to the property, and the vendor may maintain replevin against the purchaser for its recovery.

2. SAME—*when title will pass as to third persons having no notice.* Where a person sells an article to another and delivers possession, or knowingly allows the purchaser to take possession and use the same as his own, although by the terms of the sale the purchaser was to give note with security, which he fails to do, the title will pass in favor of an innocent purchaser from his vendee, or where a creditor of his vendee, without notice of the facts, acquires a lien thereon by execution.

3. A *bona fide* creditor, who, under a judgment and execution, acquires a lien on property, while in the actual possession of a vendee, by delivery from the vendor, or taken and held by his consent, occupies the same position in all respects as does a *bona fide* purchaser from such vendee. Where the apparent owner of property thus acquired has the indicia of ownership and may sell and pass a good title to a purchaser, without notice of his not having complied with the terms of the sale, a *bona fide* creditor may seize the property on execution and pass the title, not only against the apparent, but also the real owner.

4. SAME—*of the delivery.* A creditor of a vendee acquiring a lien upon the property sold is not required to show a formal delivery by the vendor. Where the vendor, after the terms of the sale have been agreed upon, gives the vendee a written order for the property on the party holding it, upon which the vendee receives the same, this will be an actual delivery by the vendor.

5. If the vendor of personal property, after the terms of sale are agreed upon, acquiesces in the possession of the vendee before he has complied with the terms and conditions of the sale, the title will pass in favor of a *bona fide* purchaser or creditor of the vendee, although the vendee may have taken possession at first without the vendor's consent.

6. WITNESS — *credibility.* The credibility of a witness does not depend upon his pecuniary circumstances, and it does not follow, either in law or as a matter of fact, that a witness pecuniarily worthless is unworthy of belief, or that if another has means, his testimony should be believed rather than

a person without means. The court has no right to say to the jury which of two witnesses is entitled to the most credit.

7. EVIDENCE—*declarations of vendee on question of vendor's rights as against vendee's creditors.* Where the vendee of personalty has the same delivered to him, or the vendor consents or permits him to take and hold its possession, and while so in his possession it is levied upon by his creditors, and the vendor replevies the same from the officer, proof of the declarations of the vendee that he was to give a note and security for the property before it was to be delivered to him, is inadmissible as against the defendant.

8. INSTRUCTION—*taking the finding of facts from jury.* An instruction is vicious, and properly refused, which takes the finding of important facts from the consideration of the jury.

APPEAL from the Circuit Court of Iroquois county; the Hon. N. J. PILLSBURY, Judge, presiding.

Mr. M. B. WRIGHT, and Mr. ROBERT DOYLE, for the appellant.

Messrs. BLADES, KAY & EVANS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that one Gaston purchased of Van Duzor a threshing machine, but they seem to disagree as to the terms of purchase. Van Duzor claims Gaston was to give notes, with certain persons agreed upon as sureties. Gaston claims he was to give his notes and a chattel mortgage on the machine. Neither notes nor security of any kind was given. Van Duzor gave Gaston an order to get the machine, which was then at Gilman. He went for and got it and brought it to Clifton, where they resided, and left it over night in the street in front of Van Duzor's office, and took it away next morning to use in threshing grain. Gaston continued to so use it from about the 7th of September until the middle of November, 1875. Van Duzor seems to have known he was so using the machine, having seen him threshing for Hethinger, and several times inquired how the machine worked.

It also appears that one Campbell and one Kinson worked for Gaston whilst engaged in threshing. Campbell seems to

have furnished four horses to work on the machine during all the time it was run, for which or for his labor Gaston paid him nothing, nor did he pay Kinson anything, and on the 22d day of November, 1875, he confessed a judgment in favor of Campbell for $184, for his labor and the use of horses, and on the same day he confessed a judgment before the same justice of the peace, in favor of Kinson for $57 for his labor, and they both swore out executions and placed them in the hands of a constable, who levied them on the machine, on the 23d of the month, and Van Duzor brought an action of replevin to recover the thresher, and on the 29th, it was, by virtue of the writ of replevin, taken by the sheriff from the constable.

Among other pleas, the defendant justified under these executions, and claimed the right to hold the property under the levies thereunder. A trial was had, resulting in favor of defendant, and that the property was subject to levy under the executions. A motion for a new trial was overruled and judgment entered on the verdict, and plaintiff appeals and asks a reversal.

It clearly appears, from the evidence, that, as between appellant and Gaston, the trade was not so far executed as to pass the title to the property to the latter. As between them, appellant could, no doubt, have maintained replevin for its recovery. But the question is presented, whether or not there was such a sale and delivery as to render the property liable to levy and sale on execution against Gaston;—whether it was not such a sale and delivery as passed the title to the purchaser as to creditors or purchasers without notice.

In the case of *Brundage* v. *Camp*, 21 Ill. 330, there was a full and careful review of the authorities, both English and American, and the rule announced, that where a party sells goods to another and delivers them to the purchaser, although it is agreed the purchaser shall give a note with security at a future day, a sale by the purchaser to another without notice will pass the title to the latter, and he will hold the goods as against

the first vendor. It was there said, as the conclusion reached after the review of authorities, that the first vendor having trusted his vendee by making a sale and delivery of the mules to him, and having put it in his power to defraud others by a sale of them, an innocent purchaser of the property for a valuable consideration, without notice, ought to be protected, and the cases of *Morris* v. *Grover*, 2 Scam. 528, *Jennings* v. *Gage*, 13 Ill. 610, *Murch* v. *Wright*, 46 id. 487, *McCormick* v. *Hadden*, 37 id. 370, and *Michigan Central Railroad Company* v. *Phillips*, 60 id. 190, and other cases in this court, all recognize the same doctrine.

A *bona fide* creditor, who, under a judgment and execution, acquires a lien on property thus situated, occupies the same position in all respects as does a *bona fide* purchaser. Where the apparent owner of property thus acquired has the *indicia* of ownership and may sell and pass a good title to a purchaser, without notice, a *bona fide* creditor may seize the property on execution and sell it thereunder and pass the title, not only against the apparent, but also the real owner. The creditor and purchaser stand on the same footing, and each will be equally protected.

The question then remains, whether, on the sale of this machine, appellant delivered possession or has done acts from which his consent for Gaston to take possession, under the contract, can be fairly inferred. A formal delivery need not be proved. It was unnecessary that appellant should go with Gaston to the property and formally say he delivered possession, but his consent that he should take it into his possession would be all that is required. Here, after the terms of the sale, whatever they were, had been agreed upon, appellant gave a written order on the person in Gilman who had the machine, to deliver it to Gaston, and under that order Gaston received it into possession, and removed it to and placed it in the street in front of appellant's office, in Grafton. Here was an actual delivery of the property into the possession of Gaston after the terms of sale were agreed upon, and the

purchaser the next morning took the property and commenced using, and continued to use it for about two and a half months as his own.

When the purchaser left the machine in the street in front of appellant's office, there is no evidence that it was delivered to him, or that he was then aware of the fact, or that he or Gaston intended it as a delivery to appellant. It then appears he delivered the property to Gaston, under the sale, and it was never redelivered to appellant. The evidence shows that he knew that Gaston was threshing grain with it, and that he received a payment on it. He took no steps to recover the machine. He seems not even to have demanded its return. We regard the evidence as abundantly sufficient to warrant the jury in finding that there was a sale and delivery, and we have seen that the agreement or understanding that Gaston was to give notes and security could not affect innocent purchasers or *bona fide* creditors.

Here, these creditors seem to have held just debts against Gaston, and they obtained judgments therefor, and obtained executions and had them levied upon the property whilst he was in possession, and they both swore they had no notice of the terms of his purchase, or that he was not the owner, and the jury seem to have believed them, and it was their province to pass upon and give such weight to the evidence as they believed it deserved.

It is next objected that the court erred in refusing instructions asked by appellant. The first refused instruction fails to recognize the rights of *bona fide* creditors if appellant consented that Gaston should take possession or his acquiescence in the possession after Gaston acquired it, although it may have been obtained without appellant's consent.

The second is not correct. It would have informed the jury that they, in weighing Gaston's evidence, might consider his financial circumstances, and if he was worthless, then they might believe plaintiff's statement of the sale. There can be no pretense in law or in fact for saying, that because a man is

pecuniarily worthless he is unworthy of belief, or that if another has means his evidence should be believed rather than a person without means, and that is the proposition this instruction announces if we understand it. Again, the court has no right to say to the jury which of two witnesses they should believe and which discredit.

The third is objectionable for the same reason that the first is, and the fourth asserts that the jury might consider certain circumstances " in coming to your conclusions that Campbell and Kinson were not acting in good faith in said transaction; and if you further believe that said parties swore out executions immediately on said judgments, then you may, from these facts, conclude that said parties had colluded together with said Gaston to obtain said judgments and levy on said machine." We had hardly supposed we could be asked to reverse for refusal to give such an instruction. All must know it is vicious. It unequivocally takes the finding of these important facts from the consideration of the jury.

The sixth, and last refused instruction asserts that if the sale was made by appellant to Gaston, and the latter failed to comply with the terms of the sale, the title, as between them, did not pass to him, and the executions did not become liens on the property. Even if it could be conceded that as between them no title passed, still, as to *bona fide* creditors, it did pass if appellant delivered the property under the sale. The instruction was, therefore, incorrect, and was properly refused.

It is lastly insisted, the court erred in rejecting evidence offered by appellant in rebuttal. He offered to prove that Gaston said he was to give a note, with certain persons as security, and the machine was not to be delivered until the notes were thus given. We fail to see how this evidence could affect the creditors, if appellant had delivered or consented or permitted Gaston to take and hold possession. That was the vital question in the case, and not what was the understanding between Gaston and appellant.

We perceive no error in rejecting this testimony. We fail to find any error for which this judgment should be reversed, and it is affirmed. ⟩