QUINCY W. WELLINGTON

*v.*

HARRY C. HEERMANS *et al.*

*Filed at Ottawa May 19, 1884.*

1.  PARTY—*to bill to foreclose mortgage.*  The holder of a bond and mortgage, claiming to own the same by a gift of the mortgagee, though he may have pledged the same to secure a loan, is a proper party in a bill by another, claiming adversely, to foreclose the mortgage, and if not made a party to the bill, will not be concluded by the decree of foreclosure, and his assignee may maintain a bill to impeach the decree on the ground that the party so foreclosing the mortgage did not own the bond and mortgage, and had no equitable title to the same.

2.  SAME—*unknown persons as parties—designating known parties as such, fraudulently.*  Section 7 of the Chancery act, which provides that in suits in chancery and suits to obtain title to lands, if there be persons interested in the same whose names are unknown, they may be made parties by the name and description of "unknown owners," must be fairly and reasonably complied with, and not evaded by making a known person a party under such designation.  A complainant knowing the parties in interest, and adopting the mode authorized by this provision, is guilty of a fraud on the law and on parties in interest thus described, against which the courts will relieve.

3.  GIFT—*of bond and mortgage by a party, after the appointment of a receiver.*  Where the owner of a bond and mortgage, after the appointment of a receiver of his effects in New York, where he resided, gave the same to a relative, and assigned the same, it not appearing that the receiver ever had possession of the same, and the receiver afterwards settled with the court and was discharged, and the donor never revoked the gift after the receiver's discharge, it was *held*, that the gift passed a title to the donee, and that it would be presumed the donor ratified the gift after the receiver was discharged.

4. DECREE—*who may have same opened within three years.* The statute which allows a defendant not served with process, and who fails to appear before decree, to come in within three years and have the decree opened, and be allowed to defend on the merits, applies only to persons made defendants to the bill. One not made a party is not required to adopt such a course, but may file a bill to impeach the decree and establish his rights. Besides, this provision was intended to give an additional remedy, and not to limit or take away those already in existence.

5. ASSIGNMENT—*to an agent or trustee—change of possession.* Where a party made a writing purporting to convey all his real and personal estate to a trustee, for the purpose of sales and collections for the benefit of the maker, the trustee to be paid a commission on all moneys by him received and paid over as directed, and afterwards executed and delivered to another person an assignment of a bond, and mortgage securing the same, and delivered the bond and mortgage to the assignee, and there was no proof that the trustee ever had possession of the same, it was *held,* that the assignment and delivery passed the beneficial title to the assignee.

6. SAME—*of chose in action—change of possession to pass title.* The title to chattels or choses in action does not pass by sale or gift, as to creditors or purchasers, unless accompanied by possession, either actual or constructive.

7. Where a person by a written document granted and conveyed all his estate, real and personal, to a nephew, in trust, to sell his lands and convert his means into money, and to manage the estate for the grantor's benefit, the proceeds to be paid out and distributed as the grantor might direct, and it appeared that both persons occupied the same office both before and after the making of such writing, and it did not appear that any change in the possession of the grantor's choses in action was ever made, and the grantor afterwards transferred a bond and mortgage to a grand-nephew, and delivered the same to him as a gift, it was *held,* that there was no such delivery to the trustee shown as would pass the title to the bond and mortgage as against the donee. If the trustee was not a mere volunteer, but a purchaser, it seems the same strictness of proof of a delivery would not have been required.

8. DEED—*construed, as to whether passing any beneficial title.* A deed recited that the grantor, from infirmities and advanced age, deemed it expedient to convey his estate, real and personal, to his nephew, and then granted and conveyed such estate to the latter, with a proviso that the grantee should sell the real estate for the best prices, and lease the same until sold, and collect all debts due the grantor, the avails of said estate to be disposed of, first, to defray the expenses of the trust, fixing the commissions; second, the residue to be paid over to the grantor during his life, or appropriated to his uses under his direction; and thirdly, after his decease the balance to be distributed as the grantor might direct in a supplementary writing: *Held,* that in equity the grantor was the only beneficiary, and had the absolute right

to receive the money arising from the sale of any of his property, to dispose of as he chose, and unless sold by the trustee, the grantor might transfer a bond and mortgage of his to any one he saw fit, and pass the equitable title, especially when the trustee had not reduced the same to his actual possession.

APPEAL from the Appellate Court for the Second District ;— heard in that court on writ of error to the Circuit Court of Lake county; the Hon. CHARLES KELLUM, Judge, presiding.

This was a bill in the nature of a bill of review, filed in the circuit court of Lake county, on March 22, 1878, by the appellant, Quincy W. Wellington, against John Heermans, since deceased, and the other appellees, seeking to review a decree of said circuit court rendered at the March term, 1876, in a case of a bill filed by said Heermans to foreclose a certain mortgage, and asking that appellant be decreed to be the owner of said mortgage, and that he be subrogated to all the rights of said Heermans acquired at a sale which had been made under said decree, and asking, also, by way of alternate relief, that said decree be held null and void, and that the mortgaged premises be again sold, etc.

On July 15, 1867, Alonzo I. Wynkoop, of Chemung, in the State of New York, executed and delivered his bond to Joseph Fellows, of Corning, in the same State, for $14,045.58, payable in ten equal annual installments, with interest at seven per cent per annum, from January 1, 1867, and on the same day Wynkoop and wife executed and delivered to said Fellows their mortgage upon certain lands in Lake county, in this State, in the bill described, to secure the payment of said bond, which mortgage was recorded in the proper office. On October 10, 1868, Fellows executed and delivered to John Heermans, since deceased, an instrument in the words and figures following, to-wit :

"Whereas, I, Joseph Fellows, of Corning, in the county of Steuben, and State of New York, from infirmities and advanced age, deem it expedient to convey to my nephew, John

Heermans, of Corning, aforesaid, my real and personal estates in the States of New York, Pennsylvania, Michigan, Wisconsin, Indiana, Ohio, Illinois and West Virginia, as trustee, for the purposes hereinafter stated:    Now, therefore, I, the said Joseph Fellows, in consideration of the premises, and also of one dollar to me paid by the said John Heermans, the receipt whereof is acknowledged, have sold, and by these presents do grant, release and convey, unto the said John Heermans, his heirs and assigns forever, all my real and personal estates in the several States aforesaid, to have and to hold the same, unto the said John Heermans, his heirs and assigns forever: Provided, always, that the said John Heermans shall sell the said granted lands, by retail, for the best prices that can be got for the same, and convey them in fee simple to purchasers, with covenants of warranty, binding my heirs to warrant and defend the titles to the lands so to be sold and conveyed; and until such lands shall be sold as aforesaid, he shall rent such of them as can be rented, for the best prices that can be got.   He shall collect all debts owing to me, and execute deeds, as aforesaid, for all lands now under contract of sale, on payment of the debts owing on them, respectively.   The avails of the said real and personal estates shall be paid, distributed and disposed of, as follows:   First, to defray the expenses of this trust, to-wit, five per cent commission on all moneys received and paid out, and all necessary and reasonable expenditures and charges in and about the execution of the trust, including local agencies.   Secondly, during my life the residue of all moneys received shall be paid over to me, or appropriated to my uses, under my direction.   Thirdly, after my decease, and after the payment of all my just and legal debts, and the expenses of the trust, as aforesaid, the residue shall be distributed as directed in a writing supplementary to this deed, to be executed by me hereafter, or in case such writing shall not be executed, then the said residue shall be distributed to my heirs, according to the laws of the

State of New York. I authorize and direct the said John Heermans, in his discretion, to compromise any disputed claims, and also to make abatements in debts where the security is insufficient or doubtful.

"In witness whereof, I, the said Joseph Fellows, have hereunto set my hand and seal, on this 10th day of October, 1868.

JOSEPH FELLOWS. [L. S.] "

On October 15, 1868, Fellows executed and delivered to Heermans the supplementary writing referred to, in regard to the distribution of his estate after his death. Heermans accepted the trust, and took possession of all the books and papers belonging to the estate, as he testified. The Wynkoop bond and mortgage belonged to the estate, but Heermans admitted that he did not, after the execution of the two instruments above referred to, see the Wynkoop bond and mortgage.

On December 28, 1868, Fellows executed an instrument in writing revoking all the powers conferred on said Heermans, and declaring that he revoked both of the aforesaid instruments of writing, and withdrew the same. A copy of this instrument of revocation was served upon Heermans shortly after its date. About this time Fellows took possession of his office, and the books and papers relating to the trust estate, and in 1869 employed Joseph F. Hill, Jr., his grandnephew, as his clerk.

On January 28, 1869, Fellows filed his bill in the Supreme Court, in Steuben county, New York, asking that the instruments of October, 1868, be declared a mere power of attorney, revocable by the plaintiff, and that the same be set aside and annulled. The Supreme Court, on a hearing, dismissed this bill, holding that the instruments of October 10 and 15 were valid, etc. Fellows appealed from the decree to the general term of that court, and on January 17, 1870, a receiver was appointed, and an injunction against Heermans

was continued.   The receiver entered upon his duties January 21, 1870, and employed Hill as his clerk.

July 9, 1870, Fellows executed and delivered to Joseph F. Hill, Jr., an assignment of the Wynkoop bond and mortgage, which assignment was, July 25, 1870, duly recorded in Lake county, in this State.   This was a gift to Hill.   On June 28, 1871, and on July 1, 1871, Fellows entered into an agreement with Heermans, and executed an instrument setting aside the former revocation, and abandoned his appeal.   On April 29, 1873, Joseph Fellows died.

On March 5, 1872, Joseph F. Hill, Jr., executed and delivered to his father, Joseph F. Hill, Sr., an assignment of the Wynkoop bond and mortgage, which was recorded in Lake county on March 15, 1872.   This was done by Hill, Jr., for his father's accommodation, and to enable him to borrow some money of George F. Lee.   March 22, 1872, Hill, Sr., executed to George F. Lee an assignment of the same bond and mortgage, which was recorded March 25, and a loan made by Lee to Hill, Jr.

August 30, 1872, Lee filed his bill of foreclosure of the bond and mortgage in the circuit court of Lake county, against Wynkoop and his wife, John Heermans, and others.   Lee died February 10, 1874, leaving him surviving Mary H. Lee, his widow, and an only child, and on the 18th of August, 1875, Mrs. Lee, as administratrix of her husband's estate, assigned the bond and mortgage back to Hill, Jr., which assignment was duly acknowledged and recorded.   Wynkoop died shortly after the filing of Lee's bill, having devised the land to his widow, she being also his executrix.   Heermans had the Lee suit dismissed for want of prosecution, and on January 26, 1876, filed his bill in the circuit court of Lake county, against Phebe Wynkoop, the unknown heirs of George F. Lee, deceased, the unknown owners, etc., which bill set forth that Heermans "has no knowledge of the whereabouts of said bond and mortgage, or whether or not they are in existence;

that he has not seen them since they were taken from his possession by the said Joseph F. Hill, Jr. and Joseph F. Hill." Heermans, in his answer to Lee's bill, said: "The complainant, (Lee) in seeking to foreclose the same, is, in fact, acting as the agent and tool of the said Joseph F. Hill, Jr., or the said Joseph F. Hill, or both of them."

At the March term, 1876, of the Lake circuit court, the bill filed by Heermans was taken for confessed by all the defendants, and a decree was entered that Heermans was the absolute owner of the Wynkoop bond and mortgage, and that the assignments of the same from Fellows to Hill, Jr., and from Hill, Jr., to Hill, Sr., and from the latter to Lee, were wholly void, and that there was then due and unpaid to Heermans, upon said bond and mortgage, the sum of $23,-123.69, and that said mortgaged premises be sold, etc. On June 19, 1876, the master in chancery sold all of the mortgaged premises to Harry C. Heermans, the son of John Heermans, for the sum of $22,741.67, except one tract sold to one Duddles, which was sold for $995. On September 26, 1877, the master made his deed to Harry C. Heermans for the land bought by him. Subsequently to that, and at various times, Harry C. Heermans conveyed various parcels of the land to various persons made parties defendant to this suit, none of whom the bill alleges are innocent parties, and none of whom have paid up the alleged consideration.

March 14, 1882, the death of John Heermans was suggested, and Harry C. Heermans, as his executor, was made a party defendant in his stead. No money was paid at the master's sale by either Heermans, and it was conceded that Harry C. bid for his father, John Heermans. On January 28, 1878, Joseph F. Hill, Jr., executed and delivered to Wellington an assignment of the Wynkoop bond and mortgage, which was acknowledged on that day, and recorded February 4, 1878, and on March 22, 1878, Wellington filed this bill.

Mr. MELVILLE W. FULLER, and Mr. CHARLES L. EASTON, for the appellant:

The instruments of October 10 and 15, 1868, did not vest the title in Heermans, and were revocable. They, during the maker's life, created only an agency. *Heermans* v. *Ellsworth,* 3 Hun, 473; *Heermans* v. *Robertson,* 64 N. Y. 332; *Heermans* v. *Burt,* 78 id. 259; *Hill* v. *Heermans,* 6 Hun, 661; *Young* v. *Heermans,* 5 id. 121.

The claim to remuneration was all that remained to Heermans after the revocation. Story on Agency, sec. 329.

Fellows, on December 28, 1868, so far as he could, revoked the instrument of October 10, 1868. *Gibson* v. *Rees,* 50 Ill. 383; *Wadhams* v. *Gay,* 73 id. 415.

There is no evidence that the bond and mortgage were ever delivered to Heermans under the deed, but had they been delivered, the legal title would not have passed. *Olds* v. *Cummings,* 31 Ill. 188; *White* v. *Sutherland,* 64 id. 186; *Medley* v. *Elliott,* 62 id. 532; *Westfall* v. *Jones,* 23 Barb. 10.

The bond could be assigned at law only by indorsement thereon. *Olds* v. *Cummings,* 31 Ill. 188.

Hill was a necessary party to the foreclosure suit. *McGraw* v. *Bayard,* 96 Ill. 146; *Lusk* v. *Thatcher,* 102 Ill. 60; *Scanlan* v. *Cobb,* 85 id. 296.

No question, here, arises between *bona fide* purchasers. If Hill was entitled to the bond, Wellington is. The assignment to him was no fraud on Heermans, who is a volunteer.

Mr. F. E. CLARKE, and Messrs. COOK & UPTON, for the appellees:

Appellant's only remedy was to appear and have the decree opened within three years. Rev. Stat. 1874, chap. 22, sec. 19; *Martin* v. *Gilmore,* 72 Ill. 193.

That a bill of review lies only to a final decree, see 2 Barb. Ch. Pr. 93; *Mackey* v. *Bell,* 2 Munf. 523; *Elzey* v. *Lane,* 2 Hen. & Munf. 589; *Lyons* v. *Robbins,* 46 Ill. 276.

To impeach a decree for fraud, it must appear that the fraudulent acts and practices charged, operated to procure the decree. *Boyden* v. *Reed,* 55 Ill. 464.

The assignee of a non-negotiable chose in action must abide by the title of his assignor. He takes subject to all existing equities,—not only as between the original parties, but as to third parties and strangers; and that even when the purchase is in good faith, and without notice of prior equities. *Bush* v. *Lathrop,* 22 N. Y. 535; *Schaffer* v. *Riley,* 50 id. 61; *Trustees of Union College* v. *Wheeler,* 61 id. 88; *Fortier* v. *Darst,* 31 Ill. 212; *Mansfield* v. *Hoagland,* 46 id. 359.

All decrees with respect to unknown persons are equally binding on them as if made parties by name. Rev. Stat. 1874, chap. 22, sec. 43; *Pile* v. *McBratney,* 15 Ill. 314; *Thornton* v. *Houtze,* 91 id. 199.


Mr. JUSTICE WALKER delivered the opinion of the Court:

It is first urged by appellant, that in the suit by Heermans to foreclose the mortgage, Hill, who claimed to own it, was not made a party, and is therefore not bound by the decree, and may impeach it because Heermans did not own the mortgage,—that Hill was an indispensable party, and he has the right to foreclose the mortgage, precisely as though no decree had been rendered. But in answer to this position it is urged that Hill was made a party by the language, "unknown owners and others." The seventh section of the Chancery act provides: "In all suits in chancery, and suits to obtain title to lands, in any of the courts in this State, if there be persons interested in the same whose names are unknown, it shall be lawful to make such persons parties to such suits or proceedings by the name and description of unknown owners, or unknown heirs or devisees of any deceased person who may have been interested in the subject matter of the suit previous

to his or her death; but in all such cases an affidavit shall be filed by the party desiring to make any unknown person a party," etc. This provision must be fairly and reasonably complied with, and not evaded. A complainant knowing the parties in interest, and adopting the mode authorized by this provision, to prevent their obtaining notice of the proceeding would be guilty of a fraud on the law, and on claimants or parties in interest, by being thus described. The law will never permit its process to be used for fraudulent purposes, and when such an attempt is made, the courts will relieve against such a fraud. The purpose of the statute is to give notice and afford an opportunity to all persons claiming an interest, to appear and be heard in defence of their claims before being deprived of them. The statute can not be perverted so as to avoid instead of giving notice to defendants. Heermans, in his answer to the bill in the Lee foreclosure suit, alleged that Joseph F. Hill, Jr., claimed to be the owner of the mortgage, and was using Lee merely to obtain a foreclosure for his own benefit, and in his testimony in this case he admitted that Hill claimed to own the mortgage by assignment from Fellows. He must have known, however, that Hill claimed to be assignee of the debt, as they were both nephews of Fellows, and both had transacted business for him. Heermans then evaded making Hill a party to his foreclosure suit, and fraudulently perverted the statute to avoid making Hill a party to his bill, and Hill can not be bound by the decree.

Heermans claims that inasmuch as the property of Fellows was all in the hands of the receiver, he had no power to assign the bond and mortgage, and the attempt to do so conferred no title on Hill; and hence appellant has no title. The receiver settled with the court, and was discharged, and we infer he made no report to the court that this claim ever came into his hands, nor does it appear that Heermans ever claimed or demanded them of the receiver; and inasmuch as

Fellows never recalled the gift after the receiver was discharged, he ratified the gift.

But it is urged that appellant's sole remedy was to come in after he purchased the bond and mortgage, and within the three years allowed by the statute, and petition to have the decree opened, and to be permitted to answer and defend. Hill, his assignor, not being a party to that decree, was not required to adopt that course. It is claimed that decree did not become final until the expiration of three years after it was rendered, and that until that time a bill of review could not be maintained. It has been held that under that provision of the Chancery act a defendant has five years after that period has expired, to prosecute error. (*Sale* v. *Fike*, 54 Ill. 292.) The same rule was announced in *Lyons* v. *Robbins*, 46 Ill. 276; and in the cases of *Southern Bank of St. Louis* v. *Humphrey*, 47 Ill. 221, and *Martin* v. *Gilmer*, 72 id. 193, it was held not to protect purchasers under it, because it was not final. But the statute calls such a decree final, and in the sense that it settles the rights of the parties and concludes complainant by its findings, it is final. It is so for all purposes, except it may, on a proper showing, be opened by a defendant who was not served with process. There can be no question that a writ of error will lie to such a decree at any time after it is enrolled, and a bill of review may be filed at any time when a writ of error will lie. This provision of the statute was intended to give an additional remedy, and not to take away or limit those already in existence. Had such been the purpose, some language would have been employed to express the intention, but we find none from which such an inference can be drawn. But outside of this, appellant or his assignor was not a party to that decree. The statute provides the parties not served, alone shall have the privilege of opening the decree, so that in any event, under the facts in this case, appellant may maintain his bill.

Having disposed of these preliminary questions, we shall proceed to consider the merits of the case. All persons in the profession must know that the title to chattels or choses in action does not pass by sale or gift, as to creditors or purchasers, unless accompanied by possession, either actual or constructive,—and in this case there is not sufficient evidence to show that Fellows ever delivered or Heermans ever acquired possession of these instruments, under the deed of the 10th of October. He, in his testimony, does not say that there was actual or symbolical delivery, or that he had any control over them, or even saw them. He supposed, but does not know, that they were among Fellows' papers, to which he had access. From the evidence in the case we are strongly impressed with the belief that no such delivery was made as was necessary to pass title to Heermans. The presumption from the fact that Fellows had possession when he assigned them to Hill, is, that he never parted with them. Fellows occupied the office in which his papers were kept, and in which Heermans and the receiver transacted the business. It was in a room of his house, and he must have had access to all his papers after as before the execution of the deed of the 10th of October, 1868. Heermans does not say there was any change after that time. We are therefore of opinion that such a delivery is not shown as passed the title. If Heermans was claiming as a purchaser, it might be that such strict proof of a delivery would not be required; but he claims as a volunteer,—and not only so, but he must claim for Fellows' estate, although in his bill and decree he claims in his own right. It is true that Hill took also as a volunteer, but appellant did not, as he paid value, and Fellows had assured him that he had the power to revoke the deeds of the 10th and 15th of October, and had the power to dispose of his property.

It is, however, urged, that appellant exchanged property for this claim worth not exceeding $3000, but the other side

asserts it was worth $17,000. In any event, Hill acknowledged in the assignment that he had received value, and it is admitted there was a consideration paid for the assignment. Did Hill acquire title by the assignment? The instruments were payable to Fellows, they were at the time in his possession, and under the deed of the 10th of October, even if Heermans ever obtained possession he held the title for the use and benefit of Fellows; but if Heermans never acquired possession, then Fellows had the unquestioned right to transfer them, as he did, and Hill thereby became fully invested with the equitable title which he transferred to appellant, and he is authorized to enforce it against Heermans and the representatives of Fellows. Hill, by the assignment, took the title, and in equity he always held the title until his assignment to appellant. It is true it was pledged as security for the money borrowed of Lee, but in equity the title was in Hill, and he was a necessary party to foreclose his title. Heermans held all of Fellows' property of which he acquired possession, with power to sell, collect and reduce it to money, and pay it to Fellows, retaining expenses and commissions. In equity, Fellows was the only beneficiary, and had the absolute right to receive the money, and when received, to dispose of it as he might choose. On this right and power there was not the slightest restriction. It, in equity, was his property, and held by Heermans solely for his use, from the time he executed the deed of the 10th of October, until the time of his death, unless sold or otherwise disposed of, so as to pass the title. This being true, we are unable to perceive any valid reason why he could not sell and pass his equitable title to this bond and mortgage. By doing so no one's rights were invaded, or impaired, or wronged. Had this money been collected and paid to Fellows, no one could contend that he could not have given it to Hill, and if so, he could surely anticipate its collection, and give the instruments that evidenced and secured the indebtedness. We are aware of no

law that prohibits a person not under disability from selling his property, choses in action, or equitable rights. Heermans was clothed with a mere naked power, coupled with no interest. We have no hesitation in saying that the equitable title to these instruments passed to Hill, and appellant has succeeded to all his rights.

In reference to the decisions of the courts of New York and other States, we only need to say that although they grew out of this deed of October 10, 1868, the questions we have discussed were not involved, nor do they decide anything repugnant to the views here expressed.

For the reasons above given, the decree of the court below is reversed, and the cause remanded.

*Decree reversed.*

Mr. JUSTICE CRAIG, dissenting.