**John Jacobson, Appellant, v. W. A. Patterson and George Vanscoy, Appellees.**

**Gen. No. 5,975.**

1. SALES, § 186*—*effect of failure to take possession.* While a sale of personal property, where made in good faith and where all the terms were agreed upon, is valid so as to pass title without a delivery of such possession as the property is capable of, if the vendor retains possession the transaction is fraudulent as to creditors and subsequent purchasers without notice.

2. SALES, § 186*—*what constitutes an unreasonable time within which to take possession.* In an action of replevin against a sheriff and the constable, representing respectively an execution and attachment creditor, by a purchaser of the contents of a corncrib, *held* twenty-four days was not a reasonble time within which the purchaser should in some effective manner take possession of the corn, and that his purchase for value would not hold the property as against such creditors.

3. SALES, § 186*—*necessity for taking possession.* In an action of replevin by a purchaser of corn in a corncrib upon which he had made payments, where it appeared that the purchaser did not go to the corn, nor nail up the crib, nor post any notice of his purchase upon it, nor put a custodian in possession, nor take any of the corn away, *held* that he could not properly prevail as against the sheriff and constable representing, respectively, execution and attachment creditors.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. SALES, § 186*—*when question of reasonable time to take possession not for the jury.* The refusal of an instruction leaving to the jury the question whether a reasonable time had passed within which a purchaser should take possession of corn in a crib, and in determining what was a reasonable time the jury should take into consideration all the facts and circumstances shown by a preponderance of the evidence, was not erroneous since the evidence was such that the jury might not reasonably conclude that a reasonable time had not passed within which to take possession of the property.

5. APPEAL AND ERROR, § 1560*—*when refusal of requested instruction not prejudicial.* The refusal of an instruction that the actual delivery of corn in a crib was not necessary to pass title to a purchaser for value was not prejudicial, as there was no dispute as to the passing of title and the instruction was unnecessary.

Appeal from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed October 13, 1914.

BERT W. ADSIT, for appellant.

NORTON & ORTMAN and P. A. GIBBONS, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

Rowe, in Livingston county, is on a railroad. Jacobson had an elevator there and bought grain. Noonan owned a farm variously stated by the witnesses to be three and one-half and eight and one-half miles from Rowe. Chronister was a tenant, working this farm on shares. Jacobson bought Chronister's oats in the summer of 1912 and paid him therefor and advanced him $153 in addition. Noonan and Chronister divided the corn in the field that fall. Noonan had a double crib, containing a west half and an east half. Chronister's corn was put in the west half of the crib. On December 13, 1912, Chronister came to Jacobson at Rowe and wished to sell his crib of corn to Jacobson. Jacobson offered him 40½ cents

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

per bushel. The offer was accepted and Jacobson bought the corn and paid Chronister $200 thereon and they agreed that the $153 should be applied thereon. Jacobson said his crib contained about 1,400 bushels. Jacobson was short of cars at the time and it was arranged that when he did get a car Chronister was to haul in the corn and deliver it at Rowe, and then receive the balance of the purchase money. On Friday, January 3, 1913, Chronister called upon Jacobson at Rowe and inquired when he would be ready to take the corn. Jacobson had since bought Noonan's corn and he wished to get another car and have all the corn delivered at the same time, and he told Chronister that he thought he would have two cars soon. Between that time and the 5th, Chronister abandoned his family and absconded. Certain creditors of Chronister obtained judgments against him and placed executions in the hands of Patterson, the sheriff, on January 6th, and another creditor sued out an attachment before a justice and placed it in the hands of Vanscoy, a constable. Patterson levied upon this crib of corn on the evening of January 6th, and thereafter Vanscoy took steps to acquire a lien, subject to the sheriff's executions, all on January 6th. Patterson appointed Ogden, a farmer living near by, as his custodian. On the 7th, Jacobson undertook to send word to Chronister to haul in the grain and then learned of the levy under the executions and attachment. He demanded the corn from the sheriff and from the constable and was refused and brought this action of replevin against them for said corn. There was a declaration of four counts, and many pleas and replications. No question arises upon the pleadings. There was a jury trial and a verdict for the defendants and a judgment for the return of the property replevied and costs, and plaintiff appeals.

The good faith of the transaction between Jacobson and Chronister was admitted at the trial, and as be-

tween those parties the sale was complete and the title to the corn passed from Chronister to Jacobson. Jacobson did not take either actual or constructive possession. He never saw the corn until after it was levied upon by the sheriff. He did not appoint any custodian of the corn nor nail up the crib nor post any notices thereon that he was the owner. He left the corn absolutely in the possession of Chronister. When the sheriff levied, the corn had been in that crib for twenty-four days after Jacobson bought it and paid most of the purchase price, without anything being done to indicate to creditors or purchasers that it was not still owned by Chronister. It might be thought from the record that the sheriff did nothing towards taking possession under his executions, except to appoint Ogden custodian, were it not that at the trial the attorney for the plaintiff admitted that Ogden was in the custody of the corn until the coroner took it under plaintiff's replevin writ.

It is the well-settled law of this State that a sale of personal property, where made in good faith and where all the terms are agreed upon, is valid and the title passes without a delivery of possession such as the property is capable of, but that if the vendor retains the possession the transaction is fraudulent as to creditors and subsequent purchasers without notice.

In *Thompson v. Yeck*, 21 Ill. 73, Thompson bought personal property at a chattel mortgage sale and left it in possession of the mortgagors until it should be called for under a written agreement. A creditor of the mortgagors attached it. It was held that for want of a change of possession the transaction was legally fraudulent and not open to explanation, and that the property was subject to the attachment. In *Dexter v. Parkins*, 22 Ill. 143, personal property was left in the possession of the vendor and was levied upon by a constable for his debt. The vendee claimed the property. It was held that the possession of the vendor

was an absolute fraud. To the same effect are *Corgan v. Frew,* 39 Ill. 31, and *Foley v. Boyer,* 153 Ill. App. 613. In *Reese v. Mitchell,* 41 Ill. 365, a mortgagee lived seven miles from the personal property mortgaged. Two days after the maturity of the debt the property was still in the possession of the mortgagor, and was seized on an execution in favor of a creditor of the mortgagor. The mortgagee replevied. It was held that one day was a sufficient time after the maturity of the debt to take possession, and that the possession of the mortgagor on the second day was fraudulent as to creditors. In *Frost v. Woodruff,* 54 Ill. 155, it was held that if the sale was in good faith, the property might remain with the vendor any length of time, if the vendee took possession before any lien attached to it while in the hands of the vendor. In *Burnell v. Robertson,* 10 Ill. (5 Gilm.) 282, it was held that in case of two sales of the same personal property, he has the better right who first gets possession, and that an attaching creditor is to be protected as a purchaser. In *Thompson v. Wilhite,* 81 Ill. 356, growing grain was sold. A day or two after it was cut an execution against the vendor was levied upon it. It was held that no further possession could be taken by the buyer until it was cut, and that the buyer had not then had time to remove it and that he should be given the grain. Hogs were sold at the same time and the vendee hired the vendor to feed them and left them on the vendor's farm. It was held that the retention of the hogs by the vendor, though in good faith, was fraudulent in law as to creditors and purchasers. In *Ticknor v. McClelland,* 84 Ill. 471, there had been a sale of standing corn, stacks of hay, hogs, etc. The sale was made on September 23rd at a distance of eighteen miles from the property. The buyers lived sixteen or eighteen miles from the property. They examined the property on September 24th and the hogs were turned into a pasture on the seller's farm to be fed by the seller. A

bill of sale was made on September 25th. An execution against the seller was issued on September 27th and levied on this property on September 29th, six days after the original sale. The purchaser replevied. It was held that a sale of personal property is fraudulent as to creditors and purchasers where the seller continued in possession; that the buyer was not re-quired to take manual possession of growing crops until the time to harvest them; and that there need not be a manual delivery of ponderous goods, incapable of being handed from one to another, and that in that case the delivery was sufficient as to the standing corn and the stacks of hay, and that, as to the rest of the property, the sale was fraudulent in law because of the failure to deliver possession, and void as to creditors, and subject to the execution. In *Wellington v. Heermans*, 110 Ill. 564, it was said that, "the title to chattels or choses in action does not pass by sale or gift, as to creditors or purchasers, unless accompanied by possession, either actual or constructive." In *Huschle v. Morris*, 131 Ill. 587, it was held that delivery is not necessary to pass the title as between the parties to an unconditional sale, but that it is necessary to make it valid as to creditors and bona fide purchasers. *Martin v. Duncan*, 156 Ill. 274, was a case of a stock of goods in a store, levied upon by attachment against a vendor after a sale. It was held that there should have been a change of possession, indicated by such outward, open, actual and visible signs as could be seen and known to the public or persons dealing with the goods, in order to permit the sale to prevail over the attachment. It is therefore clearly the law in this State that the sheriff, representing the execution creditor, should prevail in this case, unless the buyer was excused from taking possession by the ponderous nature of the crib of corn or by the circumstances in the case.

In *Hart v. Wing*, 44 Ill. 141, a case of corn in a crib, it was held that the actual removal of the entire mass

of corn was not necessary to constitute a delivery and change the possession. It was held that such possession was given in that case as the nature of the property permitted, but the report of the case does not show what was done to effect a delivery. In *Richardson v. Rardin,* 88 Ill. 124, the question was whether a constable had made a sufficient levy upon certain corn in the crib. The constable made the levy in actual view of the property and properly indorsed it upon his execution. The defendant was at the crib. The execution was served upon him. Demand was made that he turn over the property and this he refused. He was notified that a levy was made upon the corn, and that he must not further interfere with it. The constable then nailed boards on the crib, so as to secure the corn, and then gave public notice in the hearing of several persons standing near that he had levied upon the corn and it must not be disturbed. Richardson claimed to have bought the corn long before that time, and the court held that, even if he had bought it of the execution debtor, there was not such a delivery to Richardson and possession taken by him as would bind third parties without actual notice. Afterwards, the constable notified Richardson that he had levied on the corn. After that, Richardson took the corn away with knowledge of the levy. It was held that the constable did that which, but for the protection of his writ, would have made him a trespasser, not only in nailing the boards on the crib but also in exercising actual dominion over it and prohibiting its use by the defendant in execution and others. It was said that it would have been better if the constable had also placed a notice on the crib that the corn was levied upon, but that this was not necessary as to Richardson, since he had actual notice of the levy before he took the corn away In *May v. Tallman,* 20 Ill. 443, where a crib of corn was sold and the purchaser took away two loads and the seller refused to permit the rest

to be taken, and the buyer brought trover and recovered and that was sustained, it was said that even where a strict delivery was necessary, the actual removal of the entire mass of a cumbersome article, like a crib of corn, is not necessary to constitute a delivery and change of possession.

Under the above authorities we conclude that as Jacobson did not go to the corn, did not nail up the crib, did not post any notice of his purchase upon it, did not put a custodian in possession and did not take away any of the corn, it must be held that he did nothing towards taking possession, and that twenty-four days was not a reasonable time within which he should in some effective manner take possession, and that his purchase would not hold the property as against the execution creditors. The court refused an instruction, leaving the jury to determine whether a reasonable time had passed within which he could take possession of the corn, and that in determining what was a reasonable time the jury could take into consideration all the facts and circumstances shown by a preponderance of the evidence. This instruction should have been given if there had been any evidence from which the jury might reasonably conclude that a reasonable time had not passed within which to take possession of the property. Jacobson testified that after his conversation with Chronister on January 3rd about bringing in the corn and Noonan's corn at the same time, he thought he did not get a car until January 7th, but he did not testify that after buying the corn on December 13th he made an effort to get a car nor that he did not have cars during that time, nor was it shown that he could not have received the corn in his elevator. Jacobson testified that when he went out with the coroner to serve the writ of replevin, which was January 17th, the roads were muddy and corn could not be hauled, but there was no evidence that anything in the condition of the roads interfered with the hauling

of the corn from December 13th to January 6th. We therefore conclude that the jury could not reasonably have found from the evidence that a reasonable time had not elapsed for Jacobson to take possession of the corn before executions were levied, and that the refusal of that instruction did not harm the plaintiff. Some other instructions requested by plaintiff were refused which might have been given, such as that the actual delivery of the corn was not necessary to pass the title from Chronister to Jacobson, but it was not disputed that as between these parties the title did pass, and the instruction was unnecessary. In *Walsh, Boyle & Co. v. First Nat. Bank of Hiawatha,* 228 Ill. 446, there is language implying that an attaching creditor only takes the rights the debtor has in the property at the time of his levy and is not entitled to be protected as a bona fide purchaser for value, and that statement is found in some earlier cases; but in the case just cited there had been a transfer of a bill of lading, and this was held to be a symbolical and sufficient delivery of the carload of flour there involved, and this delivery was before the levy, and, the property having been delivered, a subsequent attachment could not take the property. In many of the cases we have above cited, execution creditors and attaching creditors were coupled together as each entitled to hold property seized where there had not been a sufficient delivery of possession to another.

We conclude that the judgment is right as to both sheriff and constable, and it is therefore affirmed.

*Affirmed.*