# Staver Carriage Company, Appellant, v. B. E. Richardson, Appellee.

## Gen. No. 6,265.

1. SALES, § 422*—*what constitutes conditional sale contract*. A contract for the sale of goods by the terms of which the title and ownership remain in the seller until they are paid for in cash is a conditional sale contract.

2. SALES, § 425*—*when conditional sale is fraudulent as to bona fide purchasers and execution creditors of judgment debtor*. The owner of personal property will not be permitted to sell it conditionally and deliver it to another and successfully maintain the reservation of title to himself as real owner by contract as against a bona fide purchaser for value or an execution creditor of the judgment debtor to whom such property was delivered under a contract of conditional sale, and such sale is considered constructively fraudulent as to such purchasers and creditors.

3. SALES, § 425*—*what is effect of conditional sale contract between parties*. As between the parties, a conditional sale contract with reservation of title to personal property until payment is made therefor is valid and enforceable.

4. SALES—*what constitutes delivery of possession to seller of automobile sold under conditional sale contract*. Where, prior to the issuance and levy of an execution upon a quantity of automobiles stored in a judgment debtor's warehouse and which had been purchased by him under a conditional sale contract, he agreed to return the automobiles to the seller and for the purpose of their removal from the warehouse unlocked the warehouse and gave access thereto to the seller's employees for such removal, and they entered and had removed a part of the automobiles when such execution was issued and levied, *held* that there was a delivery of the property to the seller, and the ownership and possession thereof were in him at the time of the issuance and levy of the execution, and he had the right of possession at the time of suing out a writ of replevin thereafter.

Appeal from the City Court of Aurora; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in this court at the April term, 1916. Reversed with finding of facts. Opinion filed November 9, 1916. *Certiorari* denied by Supreme Court (making opinion final).

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

BULKLEY, MORE & TALLMADGE and NATHAN J. ALD-RICH, for appellant.

FRANK G. PLAIN, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

This action of replevin was brought by the Staver Carriage Company, appellant, in the City Court of Aurora, against the appellee, B. E. Richardson. The appellant by this action recovered the possession of thirty-four vehicles, which had been levied upon by the appellee as sheriff by virtue of executions issued upon judgments by confession, recovered by the German American National Bank of Aurora, against Andrew Welch, amounting to the sum of $5,086.53. The vehicles in question had been manufactured by the appellant and delivered to Welch, under the terms of what under the authorities must be considered a conditional sale contract, by which the title to and ownership of the vehicles were to remain in the appellant until the price thereof was paid in cash. (*Gilbert v. National Cash Register Co.*, 176 Ill. 288; *Peoria Mfg. Co. v. Lyons*, 153 Ill. 434; *Chickering v. Bastress*, 130 Ill. 215.)

Andrew Welch, about the time of the commencement of this suit, was in business in Aurora and had been for many years previously. He had a salesroom or repository and warehouse in that city for the purpose of selling various kinds of carriages and vehicles, and at the time in question was in failing circumstances financially, and breaking down in health. When it became apparent that Welch would be unable to pay for the goods in question, it was thought best, by his relatives and his agent and business representative, Mrs. Mahaffey, that the goods in question should be returned to appellant, and a conference of the creditors

who had an interest in the goods which Welch had in the salesroom and warehouse was called. At that conference the business agent and representative of Welch, with Welch's subsequent approval, offered to return to the appellant the thirty-four vehicles involved, in discharge of the amount which Welch had obligated himself to pay for the same, namely, the invoice price of $2,714, which offer was accepted by the appellant through its official representative, and thereupon appellant made arrangements to take back the vehicles at once. A list of the vehicles to be returned was prepared by Welch's representative, and they were checked over by the representative of appellant, and agreed upon.

Part of the vehicles were in the showroom or repository and a part were across the street in the warehouse; those in the warehouse were still in the same condition that they were in when received, that is, uncrated. The next day, April 6th, the list mentioned was given to Peter Bickelhaupt, an employee, of the appellant, who with two other employees went to Aurora to take possession of the vehicles in question, and to attend to the removal of them from Aurora to Chicago. They reached Aurora about nine o'clock, and saw Mrs. Mahaffey, Welch's business agent, who had charge of the matter of the return of the vehicles to appellant, and she sent a man with them to unlock the warehouse and locate the vehicles in the warehouse and the repository, which was done. They checked up on the list which Bickelhaupt had brought, and located the vehicles in the repository and in the warehouse across the street, and then immediately proceeded with the work of removing them, having previously hired the necessary wagons and teams to haul them from the premises to the freight cars which had been provided by the railroad company to carry them to Chicago.

While they were engaged in this work of removal, the German American National Bank had two judgments entered by confession against Andrew Welch, one for $4,814.13 and the other for $272.40, in the City Court of Aurora; executions were issued thereon immediately, and placed in the hands of appellee, as sheriff, who, by virtue of these executions, levied upon the vehicles in question, not only those which still remained in the repository and warehouse, but also those which had been already packed in the freight cars; and, under this levy, appellee took complete possession of all the vehicles.

After the suing out of the writ of replevin here involved on the 26th day of April, 1907, bankruptcy proceedings were commenced against Andrew Welch in the United States District Court for the Northern District of Illinois, and he was adjudged a bankrupt on the 15th day of May, 1907, a trustee in bankruptcy was appointed, and all the goods levied upon by the appellee as sheriff, which had remained in appellee's possession and not replevied up to that time, were turned over to the trustee in bankruptcy.

The German American National Bank filed its two claims, based upon the judgments referred to, in the bankruptcy court, and afterwards received the dividend declared in the bankruptcy proceeding, with the other creditors of the bankrupt. It does not appear that any effective effort was made at any time by the trustee in bankruptcy to have any claim of lien of the executions in question against Andrew Welch continued for the benefit of the general creditors of the bankrupt. There was an attempt made to have the trustee in bankruptcy substituted as defendant in the place of appellee as sheriff of Kane county, and an order was obtained from the referee in bankruptcy granting the trustee leave to be substituted in this replevin suit, but the trustee never took any further

steps in that direction nor obtained any order of substitution. It appears that he filed some pleas in the case, but, inasmuch as he never obtained leave to file them nor any order of substitution, they were ignored, and thereafter no further effort of any kind was made by the trustee in the matter, and the estate of the bankrupt was closed, the referee's final report being filed on January 6, 1914, and the trustee was discharged.

To the declaration filed in this action the appellee interposed four pleas: first, *non cepit;* second, *non detinet;* third, property in the defendant; and fourth, property in Andrew Welch, and executions in favor of the German American National Bank against Andrew Welch for $5,086.53 and costs, with an averment that appellee took said goods and chattels in execution of said writ. A *similiter* was filed to the first and second pleas, and replications to the third and fourth pleas, averring property in the appellant and not in the appellee, nor in Andrew Welch, and issues were joined on these replications. There was a trial by the court, and the court found the issues in favor of the appellee, and rendered a judgment against the appellant, awarding a writ of *retorno habendo.*

It is apparent that the rights of the parties must be determined by the answer to the question, as to who was the owner and in possession of the property in question at the time of the recovery of the judgments, and the issuance and the levy of the executions mentioned. There is practically no dispute concerning the facts and the circumstances under which the judgments were recovered, the executions issued, and the levy made. It is the well-settled law of this State that the owner of personal property will not be permitted to sell it conditionally and deliver it to another, and successfully maintain the reservation of title to himself as real owner, by contract, as against bona fide purchasers for value, or execution creditors of the judg-

ment debtor, to whom such property and the possession thereof has been delivered, under a contract of conditional sale. To suffer the real ownership of such property to be in one person, and the ostensible ownership in another, without notice to the world, is considered to be constructively fraudulent as to creditors and bona fide purchasers for value. (*VanDuzor v. Allen*, 90 Ill. 499; *Chickering v. Bastress*, 130 Ill. 215; *Gilbert v. National Cash Register Co.*, 176 Ill. 296; *Peoria Mfg. Co. v. Lyons*, 153 Ill. 427; *Singer Mfg. Co. v. Ellington*, 103 Ill. App. 521; *Rosenbaum v. King*, 114 Ill. App. 648; *Jacobson v. Patterson*, 190 Ill. App. 266; *Hervey v. Rhode Island Locomotive Works*, 93 U. S. 664.)

But as between the parties, a conditional sales contract with a reservation of title to personal property until payment is made therefor, is enforceable; and such a contract is valid. (*Lucas v. Campbell*, 88 Ill. 447; *Murch v. Wright*, 46 Ill. 487; *People v. Kirkpatrick*, 69 Ill. App. 207; *Hallbeck v. Stewart*, 69 Ill. App. 225.)

In this case, as between the appellant and Andrew Welch, under the conditional sales contract in question, the title and ownership of the vehicles replevied remained in the appellant, and were in the appellant at the time that the arrangement was entered into for the return of the vehicles to appellant; therefore, if appellant regained possession of them before the German American National Bank acquired any rights with reference thereto, or any lien by virtue of its executions, it had the legal right to maintain replevin, and the sheriff had no right to levy upon the vehicles as the property of Andrew Welch.

The controlling question, really is, whether at the time of the issuance and levy of the executions the appellant had in fact repossessed itself of the property levied upon, that is to say, as to whether or not, at that time, the property had been redelivered to

appellant. And the evidence clearly shows that the employees of appellant at the time mentioned were in control and exercising dominion over the property in controversy. The property was bulky in its character, but it had been located and turned over to the disposal of appellant's employees; the warehouse had been unlocked and opened for the purpose of enabling them to remove it, and the dominion and control which they were exercising over it is clearly evidenced by the fact that they were in the act of removing it, and had already removed a portion of it, from the premises.

The unlocking of the warehouse for appellant's employees for the purpose of the removal of the vehicles and giving appellant's employees access to the repository for such removal, under the circumstances stated, amounted to actual delivery. It was said by Lord Kenyon in *Chaplin v. Rogers,* 1 East 194, that a delivery to the vendee of the key of the warehouse in which goods were lodged or other *indicia* of ownership, where goods are ponderous and incapable of being handed over from one person to another, amounts to actual delivery; and in *Jewett v. Warren,* 12 Mass. 300, which was a case involving the transfer of ownership of a boom of logs, it was held, following the rule announced by Lord Kenyon, that where the person, who was appointed by the vendor to deliver the logs lying within the boom, and who went within sight of them with the vendee and showed them to him, and the vendee accepted them, that this was all the delivery which could be usefully made of property of this nature, and was effectual, for that kind of property, as a delivery over in hand of a chattel capable of such personal possession.

In *Rice v. Austin,* 17 Mass. 197, following in the same line of authority, it was said that, "It is not necessary, to effect the transfer of bulky articles, that there shall be a manual delivery of them. The delivery

of things, which may be considered as the proper *indicia* of the property, is sufficient''; and that the fact of possession might be inferred from the plaintiff's undertaking to deal with the property as his own. The courts of review in our own State have directly followed in the line of 'decisions referred to on the question of delivery. (*Ticknor v. McClelland,* 84 Ill. 471; *Morrison v. Woodley,* 84 Ill. 192; *May v. Tallman,* 20 Ill. 443; *Funk v. Staats,* 24 Ill. 632; *Hart v. Wing,* 44 Ill. 141; *Moser v. Kreigh,* 49 Ill. 84; *O'Leary v. Bradford,* 39 Ill. App. 182; *Barker v. Livingston County Nat. Bank,* 30 Ill. App. 591; *Jacobson v. Patterson,* 190 Ill. App. 266.)

Under the facts and the law it is apparent therefore that, at the time of the issuance of the execution in question and the levy referred to, the appellant was the owner of and in actual possession of the property in question. And the holding of the court on the issues joined, that the property at the time of the levy by the sheriff was the property of Andrew Welch and in his possession, and that it was subject to the levy of the executions referred to, was erroneous; and the judgment entered in accordance with such finding and awarding a writ of *retorno habendo* for the property replevied should therefore be reversed.

The conclusions herein expressed make it unnecessary to consider and determine the other questions raised on this appeal. The judgment is reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment.

We find that the ownership and the possession of the property in question were in appellant at the time of the issuance and levy of the executions involved, and that the ownership and the right of possession of said property were in appellant at the time of suing out of the writ of replevin.