M. B. Grimes, Appellee, v. Russell B. Rodgers, Appellant.

Gen. No. 8,524.

430

Opinion filed November 4, 1931.

GRAHAM & DYSERT and STEELY & STEELY, for appellant.

JONES, MCINTIRE & JONES, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellee M. B. Grimes, as sheriff of the county of Vermilion, obtained a judgment in the sum of $864 in an action of trover for the conversion of certain corn which had been levied upon by appellee by virtue of three executions issued upon three judgments rendered in the circuit court of said county in favor of the Commercial Trust & Savings Bank of Danville, Illinois and against W. H. Hill and Marguerite Hill, his wife.

On June 25, 1927, W. H. Hill owned a farm of 160 acres situated in said county.. On this date he executed his note in the sum of $100 payable to the Commercial Trust & Savings Bank of Danville 90 days after date. On July 9, 1927, he executed a note for $470 payable to said bank 90 days after date and on August 17, 1927 he executed a $300 note payable to said bank 90 days after date. On September 6, 1927, W. H. Hill was declared a spendthrift by inquest in the probate court of said county and one John Saults was appointed conservator of his estate. At this time Winfield Scott was a tenant on said farm paying grain rent under a verbal lease and continued as such tenant during the following years and was such tenant at the time of the trial of this suit. On January 9, 1929, judgments were

taken by confession against Hill on the above mentioned notes for the respective amounts due thereon, and executions were issued thereon on said day and returned "No property found." Alias executions were issued on August 13, 1929 and were returned "No property found." Pluries executions were thereafter issued, one on November 12, 1929 and the other two on November 15, 1929. These last three executions were levied by appellant upon 12,000 bushels of corn in the crib located on the farm of said Hill hereinbefore mentioned on the 4th day of December, 1929, and a notice of such levy was nailed on said crib. The corn levied upon was the landlord's portion of the rent.

On September 4, 1929, the following contract was entered into by John Saults and appellant Russell B. Rodgers doing business as the Rodgers Grain Co.:

"Sept. 4, 1929.

"This is to certify that I, John Saults have this day contracted and sold to Rodgers Grain Co., 1400 bushels of y. corn at 85 cents per bushel (——— lbs. per bushel) to be clean, sound and dry and to grade No. 4 to be delivered into Muncie elevator or cribs at Muncie, Ill., on or before the 1st day of January, 1930.

"If damaged or inferior grain is delivered and accepted on this contract, the market difference at which such grain is selling under the contracted grade day of delivery shall be deducted from the contract price. Any extension of time to be at buyer's option.

"I certify that this grain is in my possession and free of all liens and incumbrances.

JOHN SAULTS.

"Received of State Bank of Oakwood, Oakwood, Ill., Three Hundred Dollars to apply on this contract.

JOHN SAULTS."

On September 28, 1929, appellant paid the balance due on said contract in the amount of $800. On December 31, 1929, Saults caused to be shelled and

delivered to appellant the corn in question which was two weeks after it had been levied upon by appellee.

On the date of the contract for the sale of the corn executed by Saults and appellant the corn was growing in the field, unmatured and unhusked. It is contended by appellant that the suit was improperly prosecuted to judgment in the name of M. B. Grimes as sheriff for the reason that his term of office had expired. The suit was commenced January 7, 1930. The term of Grimes as sheriff expired December 1, 1930. The trial was had on December 17 and 18, 1930. Cahill's St. ch. 125, ¶ 25, provides: "Every sheriff going out of office at the expiration of his term, and having any execution or free bill which he may have levied but not collected, . . . may proceed and collect the same in the same manner as if his term of office had not expired."

We held in the case of *Clark v. Main*, 232 Ill. App. 640 (opinion unpublished), that a public administrator after his term had expired was authorized to settle an estate then pending and to bring a suit to recover damages alleged to have been sustained by reason of the death of said deceased and to continue administration of any estate upon which he might have entered when his term of office expired. In the case of *Ramsay v. Van Meter*, 300 Ill. 193, the court held that where the term of a public administrator expired, or he is removed from office, his powers as such officer cease when his successor qualifies, and he has no further duties to perform except to complete the administration of estates theretofore begun by him, in which he continues in the capacity of an ordinary administrator. By analogy in our opinion and in view of the statute above quoted this suit was properly maintained by the sheriff in view of the fact that the cause of action accrued to him as such sheriff and the suit had been commenced by him in his official capacity prior to the time of the expiration of his office.

Another error assigned is that when Hill had been declared a spendthrift and a conservator appointed for the administration of his estate, that the power of attorney to confess judgment in the notes respectively became void and that the judgments were a nullity. The notes were executed by Hill before he was declared a spendthrift. The power of attorney to confess judgment is a part of a note itself and is irrevocable. *Johnson v. National Bank of Mattoon,* 320 Ill. 389. In this case it is held: "The power of attorney to plaintiff in error to confess judgment was irrevocable during Hoots' lifetime. The judgment could not have been entered under the power after his death because no valid judgment could be rendered against a dead man, but if the power was a valid one when executed by Hoots it was irrevocable by him and was not revoked by his being adjudged insane."

It is claimed by appellant that the title to the corn in question passed from Saults to appellant by virtue of the contract executed by them on September 4, 1929. To this we cannot agree. The contract does not purport to be executed by Saults as conservator but by himself as an individual. There is nothing in this contract which designates what particular corn is to be sold or was sold or even where it is located. Under this contract Saults could deliver any corn not raised on the Hill farm that he might personally have possessed at the time for delivery. Moreover, appellant never by any act of his, manual, symbolical, constructive or otherwise took possession of the corn before the levies of the executions. He seeks to avoid this on the ground that where goods are ponderous and incapable of being handed over from one to another, there need not be a manual delivery of the same. This rule may obtain as between the purchaser and seller but where the rights of creditors are involved there must at least be a symbolical delivery. In the case of *Lefever v. Mires,* 81 Ill. 456, the court held: "The rule

undoubtedly is, as contended by appellant, where the goods are ponderous or bulky, or cannot be conveniently delivered manually, there may be a symbolical delivery; but we are unable to see why there could not have been an actual delivery of, at least, the cow, here, even if it shall be conceded the shocks of corn and hay were too ponderous for manual delivery. But what act tending to show symbolical delivery can be claimed to have been proven? We have been unable to find evidence of any. It does not appear that the property was present when the contract for sale was made, or that anything else was done between the parties than merely to make the agreement to sell. The property remained in the possession, and, so far as the entire world could see, was still owned by Brewer, after as well as before the sale. This, as against creditors, in our opinion, was insufficient to pass the title.''

A very complete discussion of this question is found in the case of *Jacobson v. Patterson,* 190 Ill. App. 266, and it was there held that a purchaser of corn in a corn crib upon which he had made payments, where it appeared that the purchaser did not go to the corn, or nail up the crib, or post any notice of his purchase upon it, or put a custodian in possession, or take any of the corn away, that he could not properly prevail as against the sheriff representing execution creditors.

The point is made that to acquire a lien on personal property an execution must be issued, placed in the hands of an officer, and levied upon the personal property. A lien attaches to personal property as soon as an execution on the judgment is delivered to the hands of the sheriff. Cahill's St. ch. 77, ¶ 9. Saults testified that after the sheriff had levied the executions on the corn he asked the latter what he would do if he was in his place and that the sheriff told him he would deliver the corn to appellant and that by so doing appellee waived the lien. Appellee emphatically denies

that he made any such statement and this issue of fact is settled by the verdict of the jury.

We have examined the instructions given on behalf of appellee and refused on behalf of appellant which are criticized by appellant. Eight instructions were given for appellant and fourteen were refused. The instructions given on behalf of appellant in our opinion fully protected all his rights. But two instructions were given for appellee and we think are not subject to the criticisms made thereto.

We find no reversible error in the record and the judgment is affirmed.

*Affirmed.*